1

2

3

4

5

6          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
7

8   JENEEN ANN E.,                           NO.  C18-5529-JPD

9                    Plaintiff,

10       v.                                   ORDER REVERSING AND
                                              REMANDING
11  COMMISSIONER OF SOCIAL
    SECURITY,
12
                     Defendant.
13

14       Plaintiff appeals the final decision of the Commissioner of the Social Security

15  Administration ("Commissioner") which denied her applications for Disability Insurance

16  Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing

17  before an administrative law judge ("ALJ").  For the reasons set forth below, the Court

18  ORDERS that the Commissioner's decision be REVERSED and REMANDED for further

19  administrative proceedings.

20                   I.     FACTS AND PROCEDURAL HISTORY

21       At the time of the administrative hearing, Plaintiff was a fifty-one year old woman with

22  two years of college education.  Administrative Record ("AR") at 91, 214.  Her past work

23  experience includes employment as a a bus driver and a clam digger.  AR at 103.  Plaintiff was

24  last gainfully employed in 2014.  AR at 87.

ORDER - 1

On December 17, 2014, Plaintiff filed an application for DIB payments, alleging an onset date of April 1, 2014. AR at 183-84. Plaintiff asserts that she is disabled due to severe impairments of her shoulder, neck, low back and knee, as well as diabetes, irritable bowel syndrome, depression, and anxiety. AR at 41.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 114-128. Plaintiff requested a hearing which took place on February 8, 2017. AR at 38-71. On March 31, 2017, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 19-32. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On July 1, 2018, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

ORDER - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose."  *McCartey v.*

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the

Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal

citations omitted).  The Act defines disability as the "inability to engage in any substantial

gainful activity" due to a physical or mental impairment which has lasted, or is expected to

last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such

severity that she is unable to do her previous work, and cannot, considering her age, education,

and work experience, engage in any other substantial gainful activity existing in the national

economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On March 31, 2017, the ALJ issued a decision finding the following:

1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.

2.      The claimant has not engaged in substantial gainful activity since April 1, 2014, the alleged onset date.

3.      The claimant has the following severe impairments: obesity, diabetes; degenerative dis disease; mild hip tendinosis; chondromalacia of the left knee; asthma, depression; and anxiety.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations. The claimant can lift/carry up to 10 pounds frequently and 20 pounds occasionally. She can sit about six out of eight hours and stand/walk about six out of eight hours. She can occasionally reach overhead bilaterally. She can never climb ladders, ropes, and scaffolds and can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She cannot work around hazards, such as unprotected heights, heavy operating machinery, and operating a motor vehicle. She cannot have concentrated exposure to airborne irritants such as dust, fumes, and gases. She must avoid concentrated exposure to vibrations. The claimant can perform simple, routine, and repetitive tasks with simple work-related decisions. She can occasionally

ORDER - 5

interact with coworkers and have superficial contact with the public, such as passing in a hallway.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1965 and was 48 years and 11 months old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2014, through the date of this decision.

AR at 24-32.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred by improperly assessing the medical opinions;

2. Whether the ALJ erred by improperly assessing Plaintiff's testimony;

3. Whether the ALJ erred by failing to find an RFC supported by substantial evidence.

Dkt. 10 at 1.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

VII.    DISCUSSION

A.    <u>On Remand, the ALJ Should Reevaluate the Plaintiff's Testimony</u>

*1.    Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be

afforded to a claimant's testimony, and this determination will not be disturbed unless it is not

supported by substantial evidence.  A determination of whether to accept a claimant's

subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

*Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically

determinable impairment that reasonably could be expected to cause the claimant's symptoms.

20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces

medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

testimony as to the severity of symptoms solely because they are unsupported by objective

medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v.

Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the

claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

claimant's testimony.[3]  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504

F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically

identify what testimony is not credible and what evidence undermines the claimant's

[3] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation."  SSR 16-3p.  However, this change is effective March 28, 2016 and is applicable to the March 31, 2017 ALJ decision in this case.  The Court, however, continues to cite to relevant case law utilizing the term credibility.

complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record, and therefore discounted it, because (1) Plaintiff testified that she only has a "couple" of "bad days" per month; (2) the records show a treatment gap from March 2015 until June 2016; (3) the records show a strong correlation between Plaintiff's anxiety symptoms and stress, supporting that her symptoms fluctuate; and (4) the records show Plaintiff observably improves with medication adjustments and that her pain level improved with physical therapy treatment. AR at 27-30. For the reasons discussed below, on remand, the ALJ should properly assess Plaintiff's testimony, and provide clear and convincing reasons for discounting it, if appropriate, particularly with regard to Plaintiff's mental health symptoms.

### 2. *Plaintiff's "Bad Days"*

Plaintiff testified that she has bad days "a couple times a month," which the ALJ concluded was inconsistent with allegations of disability. AR at 28, 50. Vocational expert Fred Culter opined that a person would most likely not be able to maintain employment if he or she had to miss work twice a month. AR at 70. Plaintiff relies on this opinion, arguing Plaintiff has a couple bad days per month during which she misses work, and therefore she cannot sustain employment. Dkt. 10 at 11. The Commissioner asserts an improper post hoc

ORDER - 8

rationalization that the couple of bad days per month could fall on days plaintiff does not have

to work. Dkt. 11 at 7; *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court

reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ -- not

post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.")

(citing, *inter alia*, *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). There is nothing in the

record that supports the ALJ's conclusory finding that having a couple of bad days per month

would not preclude Plaintiff from sustaining gainful employment, in light of the vocational

expert's testimony. Accordingly, this is not a clear and convincing reason to reject Plaintiff's

testimony.

### 3. Treatment Gap

The ALJ found a treatment gap from March 2015 until June 2016. AR at 28.

However, the records indicate Plaintiff received treatment through at least December 2015.

AR at 266. Because the treatment gap is clearly not as significant as the ALJ found, this is not

a clear and convincing reason to reject Plaintiff's testimony.[4]

### 4. Plaintiff's Fluctuating Symptoms

The ALJ found a "strong correlation between the claimant's anxiety symptoms and

stress, supporting that her symptoms fluctuate." AR at 28. The ALJ further noted Plaintiff's

mental health counseling focused on her parenting struggles and her relationship with her

husband. AR at 28-29. As a threshold matter, the fact that Plaintiff's mental health symptoms

fluctuate is not a proper reason to reject her testimony. *Garrison v. Colvin*, 759 F.3d 995

(2014) (emphasizing that it is error to reject a claimant's testimony merely because symptoms

---

[4] As discussed below, this case must be remanded for further administrative
proceedings. If necessary, the ALJ should clarify when a treatment gap, if any, occurred.
Further, the ALJ should obtain Plaintiff's treatment records from PeaceHealth Medical Group
in Longview, Washington.

ORDER - 9

wax and wane in the course of treatment).  With regard to mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence" and isolated instances of improvement are not a proper basis to find a claimant can work.  *Id.* at 1017.

Further, evidence that Plaintiff's mental health symptoms are correlated to stress, and that her mental health counseling focused on family struggles, does not show Plaintiff's symptoms are less limiting than described in her testimony.  The fact that Plaintiff's mental health symptoms seem to be exacerbated by the stress from her own family suggests her symptoms would likewise be correlated with any potential stressors at a place of employment.  Thus, the potential that Plaintiff's symptoms could be exacerbated by stress is not a clear and convincing reason to reject Plaintiff's testimony.

### 5. *Improvement with Medication Adjustments and Treatment*

The ALJ found that Plaintiff's mental health counseling records show Plaintiff improved with medication adjustments, citing a mental health record that states Plaintiff "'look[ed]' better [that] week".  AR at 29.  Even if one assumes that Plaintiff experienced improvement, it does not necessarily follow that her symptoms improved enough to enable Plaintiff to sustain employment.  As noted above, Plaintiff's mental health symptoms fluctuate. Plaintiff's records show that while medication did potentially improve Plaintiff's symptoms in February 2015, AR at 769, her symptoms later worsened even with continued use of medication.  In June 2015, Plaintiff reported that she felt like her body was "shutting down" and her counselor advised that without alleviating her anxiety, *inter alia*, Plaintiff's "body will for sure shut down." AR at 758.  Similarly, Plaintiff reported she felt like she was "falling apart" in August 2015.  AR at 747.  Plaintiff also went to the emergency room the following month because she felt like her body could not "take it anymore."  AR at 745.

For the reasons discussed and based on the record, the Court concludes that the ALJ's finding that Plaintiff's symptoms "improved with medication adjustments" based on her mental health records is not a finding based on substantial evidence in the record as a whole. Rather, it appears the ALJ improperly cherry-picked the record to focus on periods where Plaintiff's symptoms improved.[5] Accordingly, this case must be remanded for further administrative proceedings to reevaluate the Plaintiff's testimony because the ALJ's reasons for rejecting the Plaintiff's testimony are not clear, convincing, and supported by substantial evidence.

B.      On Remand, the ALJ Should Reevaluate the Medical Opinions

   1.      *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

---

[5] However, the Court's review of the record reflects that the ALJ's findings with respect to improvement of Plaintiff's physical symptoms was supported by substantial evidence.

ORDER - 11

merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.  Brett Valette, PhD

Dr. Valette conducted a psychological evaluation of Plaintiff in April 2015, which included opinions regarding Plaintiff's functionality. AR at 663-667. The ALJ gave "great weight" to Dr. Valette's opinion that, based on objective testing, Plaintiff has the capacity to understand, remember, and carry out simple one or two-step instructions. AR at 29. The ALJ

ORDER - 12

1   gave only "some weight" to Dr. Valette's opinion that Plaintiff can interact appropriately with

2   supervisors, but not with coworkers or the public. *Id.* The ALJ discounted Dr. Valette's

3   opinion regarding Plaintiff's ability to interact with others, concluding that Plaintiff's mental

4   health records support that while Plaintiff has some limitations in interacting with others, stress

5   exacerbates her symptoms. *Id.* Although the ALJ did not identify specific mental health

6   records in reaching this conclusion, he did cite to 7F-46 and 20f-46 earlier in the Decision as

7   support that Plaintiff's mental health is correlated to stress. AR at 28. The ALJ also earlier

8   cited to several other mental health records to show Plaintiff's mental health counseling was

9   focused on her family issues and that she improves with medication adjustments. AR at 28-29.

10       Plaintiff argues the ALJ erroneously rejected Dr. Valette's opinion about Plaintiff's

11  limitations regarding contact with coworkers and the public, and offered an impermissibly

12  vague basis for the conclusion that Plaintiff can accommodate superficial contact with the

13  public and occasional contact with coworkers. Dkt. 10 at 6. The Commissioner argues that in

14  addition to the mental health records showing a correlation between Plaintiff's mental health

15  and stress, Dr. Covell, a nonexamining state agency physician, opined that Plaintiff was

16  capable of occasional contact with coworkers and superficial contact with the public, and that

17  the ALJ reasonably reached its conclusion based on the record as a whole. Dkt. 11 at 11.

18       The ALJ's rejection of Dr. Valette's findings based upon his statement that "mental

19  health counseling records support that claimant has some limitations in interacting with others,

20  but also that stress exacerbates her symptoms" is not specific, legitimate, and supported by

21  substantial evidence. AR at 29. Dr. Valette specifically opined that, based on his examination

22  of Plaintiff and review of the medical records, "[Plaintiff] cannot interact appropriately with

23  co-workers" and "[Plaintiff] cannot interact appropriately with the public." AR. 667. While

24  the mental health records do show that stress can further exacerbate Plaintiff's symptoms, they

ORDER - 13

do not establish hat with occasional contact with coworkers and superficial contact with the public, Plaintiff's limitations with respect to interacting with coworkers or the public diminishes. Similarly, the fact that the mental health counseling records show Plaintiff's treatment focused on her family and that she did show signs of improvements do not present clear and convincing reasons to discount Dr. Valette's opinion. Further, the ALJ's apparent reliance on Dr. Covell's opinion regarding Plaintiff's ability to interact with coworkers and the public case runs afoul of the hierarchy discussed in *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). It is not clear that restricting Plaintiff's interactions to superficial contact with the public and occasional contact with coworkers adequately accommodates Plaintiff's mental health symptoms. Accordingly, the ALJ's reasons for rejecting Dr. Valette's opinion are not specific, legitimate, and supported by substantial evidence.

### 3.     *Victoria Vestal, PT*

PT Vestal was Plaintiff's treating physical therapist who submitted an opinion letter in March 2015. AR at 550. She opined that Plaintiff's cervical dysfunction of her cervical spine was interfering with her ability to use her left upper extremity, but that Plaintiff had improvement with her physical therapy treatments. *Id.* She further opined that as of January 29, 2015, that last date she saw Plaintiff, Plaintiff was still "unable to walk any length of time, not more than just a few minutes before having to sit down and rest." *Id.* The ALJ gave "little weight" to PT Vestal's assessment because PT Vestal's treatment of Plaintiff focused on her neck and upper extremity, rather than her lower extremities. AR at 30. The ALJ further concluded PT Vestal's opinion was inconsistent with Plaintiff's "demonstration of a normal gait despite hip pain." *Id.*

Plaintiff argues the ALJ improperly rejected PT Vestal's opinion regarding Plaintiff's ambulation. Dkt. 10 at 7-8. The Commissioner argues the ALJ provided germane reasons for

ORDER - 14

rejecting PT Vestal's opinion, specifically that PT Vestal's treatment of Plaintiff was not focused on her lower extremities, and that the opinion was inconsistent with the medical evidence in the record. Dkt. 11 at 13-14.

The ALJ mischaracterized PT Vestal's opinion. PT Vestal opined that the "last time [she] saw [Plaintiff]" she was unable to walk for more than just a few minutes. AR at 550. She did not render an opinion regarding Plaintiff's ability to walk in the future. PT Vestal treated Plaintiff from March 2014 to January 2015, primarily focusing on her upper extremities and neck. AR 564-604. Her opinion letter in itself demonstrates she observed Plaintiff's functionality with regard to her ambulation, as she stated "[Plaintiff] was not using her walker, she was ambulating for shorter distances, but was still unable to walk any length of time, not more than just a few minutes before having to sit down and rest." AR 550. The physical therapy records also demonstrate PT Vestal observed Plaintiff's limitations with ambulation as she created treatment goals that addressed her activities of daily living, including ambulation, to reduce her pain level. AR at 603. The Court finds the ALJ reason to reject PT Vestal's opinion is not specific, germane, and supported by specific evidence.

### 4. *Greg Saue, M.D. and Christmas Covell, PhD*

Dr. Saue is a state agency medical consultant who reviewed the records in evidence as of August 2015 to assess Plaintiff's physical condition. AR at 91-101. He opined, among other things, that Plaintiff could stand or walk for six hours in an eight hour day and sit for six hours in an eight hour day. AR at 99. The ALJ gave Dr. Saue's opinion "great weight" because it was consistent with Plaintiff's treatment history which shows physical therapy improved her symptoms. AR at 29. The ALJ also noted Plaintiff has had little treatment since completing physical therapy. *Id.* As discussed above, the ALJ should reevaluate Plaintiff's

ORDER - 15

1  testimony, order more treatment records as necessary, and reevaluate Dr. Valette and PT

2  Vestal's opinions.  On remand, the ALJ should reevaluate Dr. Saue's opinion as well.

3  Dr. Covell is a state agency psychological consult who reviewed the records in

4  evidence as of July 2015 to assess Plaintiff's psychological condition.  AR at 101-103.

5  Although Dr. Covell gave "great weight" to Dr. Valette's opinion and stated it was consistent

6  with the totality of the evidence on file, he nonetheless concluded Plaintiff's social behavior

7  was not significantly limited and that she was "incapable of greater than occasional contact

8  with coworkers" and "capable superficial contact only with the general public due to sxs of

9  anxiety and panic disorder."  AR at 103.

10  The ALJ gave "great weight" to Dr. Covell's opinion because the ALJ asserts it was

11  consistent with Plaintiff's mental health treatment history which focuses on Plaintiff's family

12  conflicts and her concern that she was going through a "mid-life crisis."  AR at 30.  Plaintiff

13  argues the ALJ improperly found Dr. Covell's opinion more credible than Dr. Valette's

14  opinion because the ALJ acted as a medical expert and mischaracterized the record,

15  "speculat[ing] that Plaintiff is less impaired than alleged due to interpersonal conflicts with

16  family members."  Dkt. 10 at 10; Dkt. 24 at 4.  The Commissioner argues the ALJ's

17  interpretation of the evidence was rational, and that the Plaintiff is merely asking for a different

18  interpretation of the evidence.  Dkt. 11 at 15.

19  As discussed above with respect to Plaintiff's testimony, the fact that Plaintiff's mental

20  health treatment history primarily focused on Plaintiff's interpersonal conflicts with family

21  members does not show that her mental impairments are less limiting than Dr. Valette's

22  findings, specifically that she can appropriately interact with coworkers and the public to any

23  degree.  Dr. Covell did not provide an explanation as to why he found Plaintiff's interpersonal

24  skills less diminished than Dr. Valette.  On remand, the ALJ will reevaluate the medical

opinions of Dr. Valette and PT Vestal. In light of the direction provided by the opinion, the
ALJ should also reevaluate the medical opinion of Drs. Saue and Covell.

      C.        <u>On Remand, the ALJ Shall Reevaluate the Step Five Analysis.</u>

      Plaintiff argues that the ALJ's step-five finding is not supported by substantial
evidence. Dkt. 10 at 14. Specifically, Plaintiff argues the ALJ failed to address the severity of
Plaintiff's Irritable Bowel Syndrome (IBS), failed to address Plaintiff's inability to interact
appropriately with co-workers or the public, and failed to address Plaintiff's inability to walk
for more than a few minutes without the need to rest when determining Plaintiff's RFC. *Id.* at
14-15.

      As discussed above, this case is being remanded for a reevaluation of Plaintiff's
testimony and a reevaluation of the medical opinion evidence. The ALJ's conclusions at step
five of the sequential evaluation process are inescapably linked to his prior conclusions
regarding this evidence. Accordingly, the ALJ's findings at step five are also reversed and the
issue remanded. This case will be remanded back to the ALJ for a reevaluation of Plaintiff's
testimony, a reevaluation of the medical opinion evidence discussed above, and a reevaluation
Plaintiff's RFC. In particular, the ALJ should address Plaintiff's IBS symptoms.

VIII.   CONCLUSION

      For the foregoing reasons, the Court ORDERS that the Commissioner's decision be
REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent
with the Court's instructions.

      DATED this 28th day of February, 2019.

                           *James P. Donohue*

                           JAMES P. DONOHUE
                           United States Magistrate Judge

ORDER - 17